Good morning, Your Honors. Ed Snyder, Lieutenant Antonio, on behalf of the appellants. Good morning. Could you wait just a second so the opposing counsel can get situated? I'm sorry. It's the first time I've been here. We understand you're anxious. May it please the Court. Ladies and gentlemen, again, Ed Snyder on behalf of the appellants. We're here on an appeal of a form of nonconvenience dismissal, as the Court knows. And really, I can truncate my argument because I just saw on my iPhone that you all denied the motions to on the motion to take judicial notice of the decisions out of Mexico. So we can shorten the argument, I think, a little bit. But essentially, I'd like to start with a fairly new case that came out from this Court in February 2010, which is the NeuroSTEM case, where the Court held at the end that because the district court failed to hold, in that case, the defendant to its burden of making a clear showing of facts required to merit the exceptional tool of form of nonconvenience, they found an abuse of discretion. And thus, here's the crux of the case for me, including the NeuroSTEM analysis. You know, you have sympathetic facts, especially if we had taken judicial notice. You've got several decisions of the Mexican court. We're not going to consider this case. But the problem, you understand, is an uphill battle for appellate courts across the country. That is, if we accede to your position, there's this trend, or at least appears to be a trend, of trying to obtain American jurisdiction, U.S. jurisdiction over cases with juries that will produce, undoubtedly, a much higher verdict, more sympathetic. Right. And so there's a tendency, I assume, not only amongst Mexican counsel, but U.S. counsel as well, to make sure we get a conclusion, a binding conclusion in the Mexican court. There's no forum here, either before or even during the process that's going on in the United States. So that's the uphill battle, even if you have sympathetic facts. That's a problem that we can see. It's the floodgates problem. And I think, Your Honor, really what we have here is a conflict between two different judicial systems. What we have is a conflict, and it's really addressed in an excellent opinion by the district court in the Canales-Martinez v. Dow Chemical case out of the Eastern District of Louisiana. It's 219. It's cited in our briefs. But basically what that court looked at, it looked at, you know, the system in the civil law countries where courts fix jurisdiction, and what they look for is to have certainty in jurisdiction. Because I think every one of us would agree that besides the doctrine of forum nonconvenience, along that same line, we have to recognize the Mexican courts are trying to be respectful. They don't want to get into a tit-for-tat problem with the U.S. courts. So they are saying, basically, unless there's an agreement on the record, we won't entertain jurisdiction. So doesn't that place a burden on your side? Unlike this case, you have to get the stipulation of the other side on the record. You just can't bring your motion one-sided unilaterally in the Mexican court and get, as you got in this case, an order saying we won't entertain the case. You've got to involve, especially when you have a concession from the other side, you've got to involve them, get the stipulation in writing, put it on the record in the Mexican court. Then if you get an order that says we're still not going to entertain jurisdiction, then you've got a much better argument in the U.S. court that forum nonconvenience is inappropriate. Well, let's address that latter point, Your Honor, because that's exactly what happened in that second case, which we just filed, the Aguilar case. Because counsel for the defendant actually provided us with the declaration from their general counsel accepting jurisdiction in Mexico. I insisted they give it to me, that they translate it, they dot all the I's and cross all the T's, they give me the apple steel. They also gave me a translated apple steel copy of the judge's order dismissing that case in the state court, and that was filed off record in the Mexican case. Now, you know, those are Mexican lawyers handling that. They're handling it pro bono for these people. I'm not involved. I have no direct connection with those Mexican lawyers other than through my Mexican law expert. But that is exactly what happened in that case. So that did happen. It still got dismissed. Because the problem is, Your Honor, and this is the error really in Judge Carter's interpretation and analysis of this case, is he just looked at one side. And you could tell that from his opinion. I mean, you read his opinion, he doesn't address any argument I made in this court at all. His analysis of the availability of the forum in Mexico is one sentence. One sentence when my entire brief was about availability. I didn't really fight adequacy. And even though I addressed the private factors and the public factors, that's a sideshow compared. If you don't have availability, you don't even get there. And so Judge Carter just saw a bunch of Mexicans who got injured in Mexico and said, you know, oh, they're going to agree to jurisdiction. Throw them out. Throw the case out. I'm not sure that's a fair characterization. I'm going to come to Judge Carter's defense on that. I'm not sure I would say that that's what he did. But the difficulty I have, I'm an old district court judge, so I take umbrage. A former district court judge. Thank you. The problem I have is, you know, it's easy to look at these cases in hindsight, but, you know, is it appropriate for us to do that or should we look at the case at the time Judge Carter was making the decision, what information he had before him then? And I recognize that dilemma, Your Honor. And that's why, you know, when I filed this motion for judicial notice, it was with a little reticence because I recognized, well, how can you look at what he did and judge him and say, well, he messed up when he didn't know about all this stuff. And that's exactly the dilemma that the Seventh Circuit faced in that Bridgestone case, which they did. They actually ended up looking at it and said, well, it would be unfair to, like, act like nothing happened. We know that something happened in Mexico. It wouldn't make sense for us just to totally ignore it. And so they remanded it back to the state court, I mean to the district court. Obviously in that case. I want to go at this in a slightly different way. Okay. Because I didn't get a chance to finish responding. I'm sure he's going to follow up and we'll get the answer. Go ahead and finish answering her question. I apologize. And I think, in this case, Your Honor, what this hinges on, and just looking, isolating what was before Judge Carr at the time, and that's where I was kind of going before, is what he had before him were two experts. And my expert was saying, look, in Monterey, Mexico, this domicile, and the other expert was saying, well, you've got this provision in the code of express submission. Your expert didn't agree that if there is express submission that there would be jurisdiction? No. No. And that's something that, you know, I think that's a little misrepresentation from the other side. And I addressed that in our reply brief, which I would urge, spend a lot of time on that reply brief. But essentially, let me address the issue of express submission, because that's exactly what the issue is. That's the pinpoint. When you boil it all down, it's all about what does express submission mean under Mexican law. And the decision that we placed before Judge Carter in the record, in the prior proceeding, it was actually a Bridgestone case, and it was the only decision that was presented to Judge Carter, the only Mexican jurisprudential decision that was actually presented to Judge Carter interpreting what is express submission. And the Court clearly said that what they are, they're form selection clauses and contracts. And so what Mexican law abhors completely is you cannot post dispute fixed jurisdictions because that's form shopping. You cannot come in and say, well, something happened, and it's, you know, somebody got hurt, and there's going to be dispute about it. But guess what? Now I agree that I want to sue in Mexico because I know that life is cheap in Mexico and that it's all by the labor code, and these people's eyes are worth 50 bucks or something. Counsel, with respect, I know you feel really strongly about this, but I think casting aspersions on the judge or the other folks or denigrating the Mexican people or anybody's eyes is not appropriate here. This is serious forum. We're trying to do a good job under United States law to resolve a very sad dispute. So certainly for the members of this panel, I can tell you we are all very concerned about your clients, very concerned. I apologize, Your Honor. Grievous wrong has been done, but we're trying to deal in accordance with law. I want to ask you a slightly different question. I read Spanish pretty well, and I read those decrees, and what I got was two things. Number one, they were very insulted that Judge Carter presumed to tell them to take jurisdiction. They didn't like it. And in the impado court, the appellate court, they cited Article I, Section A.1 of the Inter-American Convention on Jurisdiction, it's a long one, in the international sphere for the extraterritorial validity of foreign judgments to find that as a matter of law, the Mexican courts have no jurisdiction. So whether the Mexican court was correct or not, and we can't take judicial notice of this under the posture of this, what do we do if it turns out that you were wrong, that the defendant was wrong, that Judge Carter was wrong, and that the Mexican law simply did not provide a forum? Under United States law, forum convenience is a plea in abatement, if you will. It is to be used with discretion. But here we have some grievously injured people. What does U.S. law say we are to do under the circumstances? The judge acted certainly in good faith, but the fact is he may have acted based on an entirely erroneous understanding of Mexican law, and you may have as well, and the opposing counsel may have as well. If you postulate that circumstance, what can we do under the Bridgestone case or anything else? Can we send it back to Judge Carter with simply this statement, we want you to take another look at what the Mexican law is, and based upon that result, to reconsider your decision. Is that what we should be doing in this case? Your Honor, I think you hit the nail on the head. I was actually thinking about that as I flew over from San Antonio last night, because, again, if you look at it in isolation, weighing the facts that Judge Carter had at the time, and now we have new evidence, including, as you stated, a brand-new, and it really is cutting-edge law coming out of Mexico with these decisions. That decision that came out of that Amparo proceeding is cutting-edge. That had never been relied on before for something like this. That's the equivalent approximately of the Mexican Supreme Court. That's right. And that statement is, we do not have jurisdiction. That's right. That defendant was not located in Nuevo Laredo. Nuevo Laredo. Nuevo Laredo, excuse me. Yes. We don't have jurisdiction. Right. So I guess that's why I'm going to ask opposing counsel the same thing, is whether the appropriate resolution here isn't to simply say, you know, isn't the appropriate thing for everyone to take a fresh look at this. I think you're exactly right, Your Honor. You know, obviously we asked for a reversal and remand, but I think, you know, alternatively I think that that is the right result, because at the end of the day the form of nonconvenience presupposes is the existence and availability of an alternate form. And the U.S. courts from the Supreme Court. Well, you thought there was going to be, and the defendant thought there was going to be. Exactly. Well, I actually argued there wasn't. I understand. I thought there wasn't. At the very least, Judge Carter was under the impression that that was what was available. Right. And so. It's worked out now that may not be true. But on the other hand, you know, although I understand Spanish pretty well, I'm not here to interpret the Mexican contract. A district court has got to do that, have somebody come and look at it based upon what's come about. That's right. But forum nonconvenience, although it's the judicial discretion, it's a doctrine of equity. And to some degree, an equity in this case, in my view, it doesn't make any sense that these grievously injured people have no forum to go to. That makes no sense to me. And that's exactly right. And that's where I was going to. The U.S. courts have always said that if there is no alternate form, then you cannot dismiss. So you're exactly right. There is no available form. Yeah, exactly. Available form. So I think there's actually precedent for that. In fact, I believe it's the Second Circuit case in the bank of credit, the BCCI case versus State Bank of Pakistan, 273 F. 3rd, 241. I believe that during that, the appeals portion of that, the law in Pakistan changed. And so the Second Circuit, this is a 2001 decision, essentially did that. I believe the result was it remanded back to the district court to take a look and consider the change. With that invitation, how do you answer my floodgates problem? What can we add, if we take that approach, what can we add to this decision that prevents the future floodgate, that is the Mexican counsel and U.S. counsel cutting off their nose to spite their face by making sure it gets into a configuration in the Mexican court where the court will not take jurisdiction. How can we prevent that trend? Well, I think each case stands on its own facts. The courts are unanimous in that. And I think that, you know, what is essentially happening, and I agree that, you know, there is a potential for floodgates. But, you know, taking the Bridgestone case, the one out of the Seventh Circuit as an example, I mean, that was an egregious case. They filed, purposely filed the case in the wrong place in Mexico. It had nothing to do with where the guy was injured or where he was domiciled, the plaintiff. So, I mean, that was an egregious case where they were, you know. But your case, too, it was a unilateral action. You didn't get the other side's input or stipulation or written submission to jurisdiction. What we did in the second case. Well, but this case. Oh, yes. Each case depends on its facts. Right. So the fact that, and that's what troubles me, is that if we go down this path, then we basically are at the mercy of the quality of the lawyers who litigate in another country. And that's just unprecedented in our jurisprudence for us to, for our decision to rise or fall on how well a case was litigated in a foreign forum. Right. And I don't see that as being a viable way to resolve a case. Well, I think if we go back to what Judge Smith was saying, you know, if, in fact, the change in the Mexican law is, you know, exactly right, it was like the Mexican Supreme Court. If that is Mexican law, then the courts in the U.S. are going to have to recognize that. I don't see how a U.S. court. I don't know because you're still at the mercy of the lawyers who advocate it. And so the law is only as good as the litigants are. Bad lawyers make bad law. And I was being a bad lawyer, so I apologize for that. So I have the same concern that Judge Jones has articulated, that we lose control of our own resolution of the cases if we're resolving the cases based on what happened in a foreign country. That concerns me greatly. Well, I guess just in closing, I would just go back to my original position, which was if you look at what was before Judge Carter at the time, and I used a sports analogy in my brief that, you know, we presented jurisprudence that said that the express, the provision they were relying on, doesn't mean what they say it means, and they came up with nothing. And so, you know, just looking at it coldly like that, you know, I believe that we met our burden, and the burden wasn't on us, but we met our burden to show that the Mexican form wasn't available based on this express submission clause, because express submission is a form selection clause, and it has to be done in a contract before a dispute arises. And the other thing, just to show the credibility of the Mexican law expert of the other side, you know, one of the things I saw in the recent response to our second motion for judicial notice was that somehow the Mexican lawyers hid the law from the appellate court justices down there, you know, when they relied on this new convention, and also there was a wink and a nod because they stated that, well, even though you submitted to the courts of Mexico, you didn't submit specifically to Nuevo Leon. And I just look at that, and I say, well, any form of... See, that's what we don't want to get into, and that's the problem with trying to sort out how reliable the advocacy was and how reliable the experts were. It puts us in a conundrum. But going back just to what was before Judge Carter, because we're talking now about the decision that came out afterwards in Mexico, but going back to what was before Judge Carter, we had an absolute battle of experts. And, again, what was presented to Judge Carter was one jurisprudential decision that supported us and zero for the other side. So going back to... I don't know. That was Judge Carter's call. If he has the battle of the experts, that's a classic credibility determination that a trial judge makes. Right. That's where we are. Okay. You've exceeded your time. We'll give you a minute for rebuttal. Thank you. Let's hear from our counsel. Good morning, Your Honors. Richard Nakamura on behalf of Appley's Advanced Medical Notice. Sorry to jump in so fast. We should reconsider our decision to not take judicial notice. He's alleging, in essence, that we have a subsequent decision, and it clearly shows a new trend, a new analysis by the Mexican courts, that the express submission clause is a contract form selection clause. And it must be in the contract prior to the dispute. We're not talking about that kind of case here. And, therefore, Judge Carter just got it wrong. If that's true, we don't know. But if that's true, should we not reconsider our question about taking judicial notice and ask Judge Carter to consider those very issues? Well, if you are talking about the apparel court's decision, you have to look at how that court was able to reach the conclusion that it did regarding submission not being sufficient. And that is because it, like the Intermediate Court of Appeal, saw no evidence of our submission in the record because the Mexican counsel did not put evidence of our submission into the record. So, therefore, the apparel court had no occasion to consider the effect of submission on the question of jurisdiction. And so it went to both this form non-selection theory and to the convention treaty to base its decision. So I think the case for the apparel court's holding that there is no jurisdiction based on submission is only as good as the evidence of submission that they had. The Bridgestone approach there where the Seventh Circuit sent it back to find out whether one of the parties had acted inappropriately in providing information to the foreign jurisdiction. I mean, I certainly sympathize with my colleagues here that we don't want to become the world's forum for everything, but the fact is our law permits us to hear certain cases. And this is one of them. Nobody argues the fact that if the judge had not thrown this out on forum nonconvenience grounds, they have served you in a jurisdiction where you're located and they have people who allegedly used your product. There's no question about that. So it's not like the recent case that we had involving some L.A. lawyers and others about improper falsified evidence with banana workers and fungicides and things like that. This is a real bona fide case that could perfectly well be heard by Judge Carter. So I guess my question is, taking your point about the apparel court, if the apparel court didn't have the evidence before it, then Bridgestone's the answer, isn't it, where we send it back to Judge Carter and say, take a look at this. Was this properly presented? If it was properly presented, then is there a change in Mexican law? Then you look at the Amdullahi case where there was a tectonic change, according to the court. If that's the case, then maybe he takes another look at it, decides whether in his discretion it was still correct to grant a forum nonconvenience dismissal. But we know both from the translation of the Court of Appeals opinion in Gutierrez that there was no evidence of the submission. No, counsel, I don't dispute that. I'm simply saying that none of that was before Judge Carter, as I understand it. He had none of this information about the imparo court or what was there and what wasn't there. Correct. You're stating, if I understand you correctly, that that decision is undercut because it didn't have the evidence before it. Of submission. That's all perfectly appropriate for a trial court to consider. But my point is that's the very kind of thing that you had in the Bridgestone case, that the Seventh Circuit Average Court is not binding on it. But the reasoning, it seems to me, is perhaps appropriate here. I'm just really troubled by the fact that a case that is properly heard, could properly be heard in the district court by Judge Carter, was dismissed based upon forum nonconvenience on the understanding, clearly on the understanding, that it would be heard in Mexico. Now, the Mexican courts say, not going to happen. The highest court there, evidence or no evidence, says there's this treaty we have with the United States and other people, and that says we don't have jurisdiction. Now, maybe that's not a correct understanding of the facts, but if it's anywhere close to that, why doesn't it make sense to send this back to Judge Carter and say, take a look at it. Did the counsel intentionally blow it? If they did, then you've got ineffective resistance to counsel or something of that effect. Following on Judge Smith's question, maybe if we agree with the other side, maybe the way to limit this decision to appropriate cases is to insist, just exactly as the appellant requested, that these types of orders that kick a case for forum nonconvenience contain a condition clause. That is, the foreign court will accept jurisdiction of the dispute. Maybe that's the proper limiting factor. That imposes a burden on you. You've got to consent to the jurisdiction and make sure that gets before the foreign court, and it imposes a burden on them. They're not going to play a unilateral game to cut off their nose to spite their face. They're not going to make sure that the foreign court doesn't because, but there is a condition that the forum nonconvenience is based upon you and them making sure it gets before the foreign court. What do you think about that? Well, circuit precedent does not compel the inclusion of a return clause. The Fifth Circuit does. The Court would certainly be within its discretion to carve out unique circumstances that they see in this case for a return clause, but I would submit that based on the record Judge Carter had before him, at the time he ruled, that the record amply supported his discretionary call not to put in a return clause. And let's give all that credit. Let's assume that's exactly right. Then it gets back to the point that I raised with the public counsel of assuming that everybody was operating on a misunderstanding. You still have these people who have been grievously injured, have filed a suit in the United States court where there is clearly jurisdiction, and the court below, in good faith I'm sure, said, Hey, everybody seems to agree this can be heard in Mexico. Goodbye, see you later. No problem with that. If that's really true, that's correct. But if it turned out that it was utterly wrong on everybody's part, that's where I'm troubled by this. That's where I think the Abdullahi case out of the Second Circuit and Bridgestone maybe instructs us, the reasoning of it, that it cannot be, it cannot be that these people are left without any forum based upon a misunderstanding of law by the judge, by the parties, maybe even by the experts. If Mexican counsel had clean hands and had in fact submitted evidence of AMO's submission to both the district court, the appellate court, and the empowered court, I would agree. And that's where Bridgestone comes in because then you go back and Judge Carter says, Okay, what actually happened here? And if they have unclean hands, then he is absolutely right to do what he did because that's a setup. That's contrived. But in my example, we don't have that. But the question is, shouldn't the district court take a look at it again based upon what actually happened? But I'm not sure from a reading of the Seventh Circuit's opinion in Bridgestone, Judge Smith, that it's clear that it was undisputed, as it is in our case, that there was no evidence of submission given by the Mexican counsel in that case. I think part of the reason it was sent back was to determine whether or not that omission occurred. In our case, there is no factual dispute. The record, if we go back, is going to be the same record that this Court is looking at this morning. It is going to consist of Maybe the district court, though, needs to amplify the record by having new testimony about what has actually happened in this case. What actually happened in the Ampado Court? We know from the translation that the Mexican Court of Appeals did not see any evidence of our submission. And our expert Was that because of their pleading rules, though? See, that's the kind of thing that Judge Rollinson was pointing out. Maybe they don't permit that. Maybe they just look at this as a general rule, and the Ampado Court said, We've got this international treaty applying this. These people, this company is not based in Nuevo León. That's all we need to know. Goodbye. You're out of here. Fair point. It's a question of the pleading rules. But let's look at the pleadings. Our expert obtained a certified copy of the complaint. And his declaration, which is in the record, says there was no evidence of the submission attached to the complaint. Was he pleading that there was No. That the declaration, that there was no evidence of AMO's submission in the form of a declaration or otherwise attached to the complaint. In fact, he quoted paragraph 20 of the Mexican complaint, and I'm going to paraphrase now, I apologize, which said that Mexican counsel understands that AMO may have submitted, but Mexican counsel has not seen any evidence of that. And so we have a record that is fairly clear that what was tendered to the Mexican courts deliberately undermined. Well, do you submit declarations when you file a complaint to counsel? I suspect you don't. You only do that when you file a motion for summary judgment or a 12B6 motion. No. This would have been the declaration of AMO's counsel submitting to the jurisdiction of the Mexican courts that would have been attached to the Mexican complaint. The complaint. Correct. Correct. Going back to what exactly Judge Carter had before him at the time he made this ruling, there really was no dispute among the experts that express submission would suffice. Opposing counsel takes issue with that representation. I understand. I understand. Where in the record can we find the agreement of the plaintiff's expert that express consent confers jurisdiction upon the Mexican courts? Plaintiff's expert at Excerpts of Record 98, paragraph 29. 98? 98, yes, Judge Rollinson, says that express or tacit consent suffices for jurisdiction under Mexican federal law. That's the same thing that our experts said. The dissonance arose when the parties began to discuss the requirements for submission under State law. Now ---- Mexican State law. The law of Nuevo Leon. Thank you. It's not much different than ours. If you file a medical malpractice claim in Federal court without some Federal basis that would get dismissed, but you could do it in California. But the disagreement over what Nuevo Leon law said or did not say regarding submission is somewhat academic because plaintiffs refiled in Federal court. That's my first point to that. The second point is that when plaintiff's expert discussed the jurisdictional requirements under State law, he talked about the domicile provision and the requirements for express submission. What he left out, and our expert had to go back in and fill in the hole, what he left out were the requirements for tacit submission. And under the laws of Nuevo Leon, like under Mexican Federal law, a plaintiff could tacitly submit to jurisdiction simply by filing the complaint in that form. So you have the tacit submission of the plaintiffs coupled with the express submission of AMO. So Judge Carter, looking at this, could reasonably conclude as long as plaintiffs are going to refile, that's tacit submission under either Federal or State law. I have a declaration from AMO saying they submit. There's not going to be a problem. On that record, there's no abuse of discretion in not putting a return clause. Kennedy. My question to opposing counsel, credit everything you've said, okay? But the reality is, unless there was collusion, the Mexican Supreme Court says there is no jurisdiction in Mexico for this case. I'm not sure collusion is. Well, failure, gauchery, stupidity, whatever you want to call it. You can call on it all. But the reality is, there is no jurisdiction. Okay? So what's wrong with sending it to Judge Carter and saying, look, you've got these really grievously injured people. Right now, they have no home. They have no forum to have their claim heard. You had certain facts before you. Things seem to have changed. The understanding that you went on, which was that it was going to be heard by a Mexican court, apparently is incorrect. Will you please take a look and see whether the Mexican court's decision is one that you need to credit and, therefore, perhaps reconsider your forum nonconvenience decision, or whether, in fact, it is true, in which case, we would also like you to reconsider your forum nonconvenience decision so that these people are not just thrown out based upon a misunderstanding of Mexican law. What's wrong with that? It assumes that the reason we have a misunderstanding of Mexican law is because of the unfaithful conduct of Mexican counsel. But you can explore all of that. The district judge can explore it. But we're going to have the same record there that we have today. Well, that'd be fun. You're going to love it, Counsel. I'm sure I will, Justice. My time is up, unless the panel has further questions. Thank you, Counsel. We'll give you one minute for rebuttal. I just wanted to touch on two different issues. First of all, again, the Aguilar, the second decision, again, included their version of their declaration translated into Spanish by them, apostille, which is required under Mexican law. That was filed of record and is clear in the decision we filed with our second motion for judicial notice. So there's no issue. That was before these courts in the second case down there in Mexico. Yeah, but you're on appeal at that point. And so you had a different posture when you're putting in something on appeal that you didn't put in at the trial court level. So that's a big difference. Exactly. So getting back to your point, Judge Rawlinson, which I think is very apt, looking at the actual record that was before Judge Carter, you asked opposing counsel, where is the agreement by my expert with his expert? And there isn't an agreement, Your Honor. It's on ER 98 and 99. He cited you to paragraph 29 of Felipe Torres' affidavit. All he does there is recite the code provision under Mexican law that allows for what's called express submission. But he clearly ---- He said generally that express admission would confer jurisdiction on the court. And then he goes on to say as long as there's an agreement by both parties. And then he cites that Bridgestone case, which I think this is the most important part of the record. It's on ER 113 and more importantly on ER 114 where there's a prior decision by another court talking about what express submission means. It goes on to state that it is contractual parties. It doesn't apply to torts. It only applies to contracts. It's a foreign selection clause. But Judge Carter had all of that before him. Right. And it's a difficult situation. And that's why we're saying it was an abuse of discretion. I understand. All right. Thank you. Thank you so much. Thank you to both counsel. The case is argued and is submitted for a decision by the court. And we'll be in recess for 10 minutes.
judges: Jones, Rawlinson, Smith M.